**Reversed and Remanded and Memorandum Opinion filed May 17, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00622-CV

## LADONNA K. TATUM, Appellant

## V.

## BRETT A. TATUM, Appellee

**On Appeal from the 309th District Court
Harris County, Texas
Trial Court Cause No. 2010-24775**

## M E M O R A N D U M   O P I N I O N

In this appeal from the division of marital property in a divorce decree, LaDonna K. Tatum asserts that the trial court abused its discretion by (a) categorizing property in Galveston County, Texas as Brett A. Tatum's separate property and (b) making its property division. We reverse and remand.

## BACKGROUND

LaDonna filed for divorce from Brett in April 2010. The proceedings were tried to the bench. On LaDonna's inventory filed with the trial court, she identified a property

in Galveston County (the "Bolivar property") as community property. Brett, however, identified the Bolivar property as his separate property on his inventory.

During the trial, LaDonna testified regarding the Bolivar property as follows:

[LaDonna]. We purchased the house from his family who had offered the house to every member of the family, but nobody wanted it. So, we, in turn for taking over the responsibility, upgrading it or doing whatever we wanted to do to it, they passed on the option for us to purchase that.

Q. And ma'am, were you involved in the transaction in terms of the sale of the house?

[LaDonna]. The purchase of the house?

Q. Yes, ma'am, the sale and purchase?

[LaDonna]. Not signing of the documentation.

Q. But were you around when the person whose name was on the title to the house negotiated the deal with you and Mr. Tatum?

[LaDonna]. Absolutely.

Q. And was Mr. Tatum there also?

[LaDonna]. Yes.

Q. You know that Mr. Tatum has filed with this Court an inventory where he recites that the property in Boliver [sic] is his separate property.

[LaDonna]. Yes, I know.

Q. Do you understand that?

[LaDonna]. Yes.

LaDonna acknowledged that the property was transferred from Donald Tatum, Brett's father, to Brett on May 5, 1996. She testified that she and Brett were married at that time. She further explained that she and her family, including Brett, performed extensive work on the home to improve it. LaDonna described the property as a "one-room cabin" that was a nice beach house. She also testified that the family spent summers at the beach house during the course of her marriage to Brett. Finally, LaDonna testified that the house was "wiped out" by Hurricane Ike and that Brett had cancelled the insurance on the property before the hurricane. She estimated the value of the beach house at around $75,000 before it was destroyed by the hurricane.

Brett, on the other hand, testified that the Bolivar property was given to him by his father. He acknowledged that the family spent time and effort repairing the house, but stated that they invested little money in the improvements. He further testified that the insurance lapsed on the property due to an oversight on his insurance agent's part. Brett also agreed with LaDonna's testimony that the family benefited from the use and enjoyment of the house "[e]very summer since 2000 or 1996." However, he testified that he had claimed the Bolivar property as his separate property because his father had given it to him and he did not pay for the property. He produced a certified copy of the deed showing that his father had deeded the property to him.

The trial court awarded Brett the Bolivar property as his separate property. It then divided the remainder of the community property. LaDonna filed a motion for new trial in which she complained that the trial court erroneously identified this property as Brett's separate property and, thus, that the division of property was not just and right. This motion was overruled by operation of law, and this appeal timely followed.

## ANALYSIS

### A. Characterization of the Bolivar Property

In her first issue, LaDonna asserts that the trial court erred in characterizing the Bolivar property as Brett's separate property. Characterization of marital property is a conclusion of law we review *de novo*. *See Carter v. Carter*, 736 S.W.2d 775, 777 (Tex. App.—Houston [14th Dist.] 1987, no writ); *see also Stavinoha v. Stavinoha*, 126 S.W.3d 604, 608 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Zagorski v. Zagorski*, 116 S.W.3d 309, 314 (Tex.App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). We review conclusions of law to determine whether they are correct based on the facts of the case. *Stavinoha*, 126 S.W.3d at 608; *Zagorski*, 116 S.W.3d at 314. We will uphold a trial court's conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Stavinoha*, 126 S.W.3d at 608; *Zagorski*, 116 S.W.3d at 314.

Separate property is, as applicable here, that property acquired during the marriage by gift, devise, or descent. *Stavinoha*, 126 S.W.3d at 607; *see also* Tex. Const. art. XVI, § 15; Tex. Fam. Code § 3.001(2). Community property is that property, other than separate property, acquired by either spouse during marriage. Tex. Fam. Code § 3.002; *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001); *Stavinoha*, 126 S.W.3d at 607. All property possessed by either spouse during or on dissolution of marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a); *Barnett*, 67 S.W.3d at 111; *Stavinoha*, 126 S.W.3d at 607.

To overcome the community-property presumption, a spouse claiming assets as separate property must establish their separate character by clear and convincing evidence. Tex. Fam. Code Ann. § 3.003(b); *Stavinoha*, 126 S.W.3d at 607; *Zagorski*, 116 S.W.3d at 314. Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the finder of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007; *In re J .F.C.*, 96 S.W.3d 256, 264 (Tex. 2002); *Stavinoha*, 126 S.W.3d at 607. A gift is a transfer of property made voluntarily and gratuitously, without consideration. *Rusk v. Rusk*, 5 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

As described above, LaDonna testified that she and Brett purchased the property. Although she never mentioned a purchase price, she instead indicated that the property was given to them in exchange for their agreement to take over the upkeep of it. Brett testified that his father gifted the property to him. However, the deed provides as follows:

> Donald A. Tatum . . .for and in consideration of the sum of ten and no/100 dollars ($10.00) cash and other good and valuable consideration in hand paid by Brett A. Tatum . . receipt of which is hereby fully acknowledged and confessed, ha[s] granted, sold and conveyed, and by these presents do grant, sell and convey unto [Brett A. Tatum]. . . .

Nothing in the deed indicates that Brett's father intended to convey the property to Brett as a gift; indeed the deed indicates that Brett provided consideration of $10.00 cash and

4

"other good and valuable consideration." *See id.* (stating that gift of property is made without consideration). Additionally, the deed does not indicate that it was conveyed to Brett as his separate property or that the consideration for the property was paid from Brett's separate estate. *See, e.g.*, *Hodge v. Ellis*, 154 Tex. 341, 277 S.W.2d 900, 904 (Tex. 1955) ("The elemental presumption in favor of the community as to land acquired in the name of either spouse during the marriage is, indeed, sometimes displaced by a presumption in favor of the separate estate of the wife where the deed of acquisition recites either that the land is conveyed to her as her separate property, or that the consideration is from her separate estate, or includes both types of recitation."); *Little v. Linder*, 651 S.W.2d 895, 898 (Tex. App.—Tyler 1983, writ ref'd n.r.e.) (same). There is simply no clear and convincing evidence in our record to overcome the presumption that this property, acquired during the course of Brett and LaDonna's marriage, is community property. *See* Tex. Fam. Code Ann. §§ 3.002, 3.003(a); *Barnett*, 67 S.W.3d at 111; *Stavinoha*, 126 S.W.3d at 607.

In sum, we do not agree with the trial court's characterization of the Bolivar property as Brett's separate property. The record does not reflect the degree of proof that would produce in the mind of the finder of fact a firm belief or conviction as to the truth of the allegation sought to be established. *See Stavinoha*, 126 S.W.3d at 607. Accordingly, we sustain LaDonna's first issue.

## B. Division of Property

In her second issue, LaDonna asserts that the mischaracterization of the Bolivar property as Brett's separate property caused the trial court to make a division of property that was not just and right. *See* Tex. Fam. Code § 7.001 (requiring trial court to make property division that is "just and right"). Because we have already determined that the trial court erred in characterizing the Bolivar property as Brett's separate property, we also sustain this issue.

## CONCLUSION

Having sustained both of LaDonna's appellate issues, we reverse and remand the trial court's judgment for proceedings consistent with this opinion.


/s/          Adele Hedges
                  Chief Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Brown.